## A00A0695. RAINTREE TRUCKING COMPANY, INC. v. FIRST AMERICAN INSURANCE COMPANY.

### (534 SE2d 459)

MILLER, Judge.

The issue on appeal is the effect of a "Form E" certificate of insurance filed with the Texas Railroad Commission. The certificate represented that First American Insurance Company insured Raintree Trucking Company for damages caused by Raintree's trucks; in fact, Raintree had no insurance from First American, but only from Commonwealth General Insurance Company, which has since been placed in receivership. First American refused to pay a Texas judgment entered against Raintree for property damages caused by one of its trucks, and so Raintree filed the present Georgia action against First American to recover for having satisfied the judgment. We hold that representations contained in Form E certificates are not intended to benefit the motor carrier but to benefit those injured by the carrier (i.e., the traveling public), and therefore in a dispute with the insured, an insurance company is not estopped from denying coverage where no insurance contract exists.

As of June 1992, Commonwealth insured Raintree and filed the requisite federal certificate with the then Interstate Commerce Commission to reflect that coverage. Commonwealth experienced problems regarding its qualifications to file the correlating state certificate (Form E) with the Texas Railroad Commission, and so in March 1993, Commonwealth entered into an indemnity or "fronting agreement" with First American, which agreement allowed Commonwealth to file Form E certificates in the name of First American as of February 1, 1993. Under this arrangement, the Form E certificates showed that First American insured Commonwealth clients, when in fact Commonwealth did. Commonwealth indemnified First American for any liability First American incurred as a result of filing the Form E certificates. Based on this agreement, Commonwealth filed a Form E with the Texas Railroad Commission in April 1993 (amended in May 1993), certifying that as of June 1992 First American was the liability insurer of Raintree.

Meanwhile, in September 1992, a driver operating a Raintree truck caused an accident in Texas, resulting in property damage to a vehicle owned by Davidson Oil. Davidson Oil filed suit against Raintree in July 1993. Commonwealth went into receivership, and so Raintree demanded that First American provide coverage and defense for the action. First American eventually declined. In 1996, a Texas jury awarded Davidson Oil $46,646 against Raintree, which judgment Raintree satisfied.

Raintree sued First American in Georgia to obtain reimbursement, arguing that although there was no insurance policy between

First American and Raintree, the April/May 1993 Form E certificates filed with the Texas Railroad Commission estopped First American from denying coverage to Raintree and thus obligated First American to reimburse Raintree for payment of the judgment. First American countered that Form E certificates were not for the benefit of the insured but for the sole benefit of those who may have a cause of action for damages for the negligence of the motor common carrier. The trial court agreed and granted summary judgment to First American. Raintree appeals, contending that the court erred in finding no fact issue on the question of whether First American was estopped from denying coverage, or on the question of whether Raintree was a third-party beneficiary of the fronting agreement.

1. The first issue is what law we should apply in answering these questions as to the estoppel effect of a Form E certificate filed in Texas. No party has pled or proved the law of any other state, including Texas. "Where no statute of the foreign State is pleaded, it will be presumed that the common law prevails in such State."[1] This is the common law as codified by the Georgia legislature or interpreted by the courts of Georgia.[2]

2. Raintree contends that First American is estopped to deny the express statement in the Form E certificate that First American issued a liability policy to Raintree. Georgia common law is clear that "estoppel cannot create a contract of insurance coverage where none existed when the loss occurred."[3] Unless there is evidence that a contract of insurance coverage existed between First American and Raintree on the date of the accident, Raintree's estoppel argument must fail.

Raintree argues that the Form E certificate filed pursuant to the fronting agreement between First American and Commonwealth created a retroactive contract of insurance coverage. As between Raintree and First American, this argument fails. The insurance coverage reflected in such legally mandated certificates "is not for the benefit of the insured (motor common carrier) but for the sole benefit of those who may have a cause of action for damages for the negligence of the motor common carrier."[4] As stated so aptly by the Wis-

---

[1] (Citation and punctuation omitted.) *Avnet, Inc. v. Wyle Laboratories*, 263 Ga. 615, 621 (3) (437 SE2d 302) (1993).

[2] *Leavell v. Bank of Commerce*, 169 Ga. App. 626 (2) (314 SE2d 678) (1984).

[3] (Citations and punctuation omitted.) *Protective Life Ins. Co. v. Robinson*, 193 Ga. App. 316, 317 (1) (387 SE2d 603) (1989); see *Atkinson v. American Agency Life Ins. Co.*, 165 Ga. App. 102, 105 (2) (299 SE2d 600) (1983).

[4] (Citation and punctuation omitted.) *Ross v. Stephens*, 269 Ga. 266, 267 (496 SE2d 705) (1998); see OCGA § 46-7-12 (a); *Guinn Transp. v. Canal Ins. Co.*, 234 Ga. App. 235, 236 (2) (507 SE2d 144) (1998) (statute requiring common carrier to show financial responsibility is to protect public against injury proximately caused by common carrier); *Farley v. Continental Ins. Co.*, 150 Ga. App. 389, 391 (258 SE2d 8) (1979) (the act requiring such insurance "did

consin Supreme Court regarding Form E certificates required by similar Wisconsin law, "[t]he policy of the statute is to assure recoverable compensation to members of the public injured by common carriers, not to allow an insured to reap the benefits of liability insurance coverage for which the insured has not paid."[5] As to members of the motoring public and their property injured by the negligent common carrier, the public filings obligate the named insurance company to make sure they are recompensed to the specified limits; but as to the negligent common carrier, the insurance company's obligations are determined by the terms of the insurance policy.[6]

The Form E certificate created no contract of insurance between First American and Raintree, and for this reason, estoppel could not create such a contract as between these parties.[7] Moreover, even if estoppel could create an insurance policy where none existed, estoppel would not apply here, because "estoppel requires justifiable reliance on the opposing party's representations or conduct and a change in position to one's detriment."[8] First American's delay in denying coverage creates no estoppel.[9] The purpose of the Form E certificate is to protect the public, not Raintree; therefore, Raintree could not reasonably rely on the certificate for protection.[10]

In granting summary judgment, the trial court correctly refused to apply estoppel.

3. The trial court also correctly refused to apply the doctrine of third-party beneficiary. Raintree contends that it was a third-party beneficiary to the fronting agreement between First American and Commonwealth, in which First American agreed to file the Form E certificates. Thus, claims Raintree, because the agreement's purpose was to ensure Commonwealth's clients were covered, Raintree should

---

not have as its purpose protecting the insured from loss, but did have in mind the protection of the public against carrier-inflicted injuries"); see generally *Great American Indem. Co. v. Vickers*, 183 Ga. 233, 235 (188 SE 24) (1936) (insurance for protection of public against injuries proximately caused by negligence of motor carrier).

[5] *Rural Mut. Ins. Co. v. Peterson*, 134 Wis.2d 165 (395 NW2d 776, 781 (I)) (1986); see *White v. Excalibur Ins. Co.*, 599 F2d 50, 54 (IV) (5th Cir. 1979) (Georgia statute required insurance for protection of the public, not for protection of common carrier employees); *Prickett v. Hawkeye-Security Ins. Co.*, 282 F2d 294, 298 (10th Cir. 1960) (interpreting Kansas law) (such insurance intended to assure compensation to injured members of the public, not "to fix rights as between the insurance carrier and the operator of an insured motor vehicle whose negligence gave rise to" the injury).

[6] See *Ross*, supra, 269 Ga. at 268; see also *Southeastern Stages v. Gen. Ins. Co.*, 151 Ga. App. 487, 490 (2) (A) (260 SE2d 399) (1979) (although injured plaintiff may recover from insurer, insurer not necessarily required to *reimburse* the common carrier which failed to comply with conditions precedent of the policy).

[7] *Robinson*, supra, 193 Ga. App. at 317 (1).

[8] (Citation, punctuation and footnote omitted.) *Bibb County v. Ga. Power Co.*, 241 Ga. App. 131, 137 (4) (525 SE2d 136) (1999).

[9] See *Robinson*, supra, 193 Ga. App. at 318 (1).

[10] See, e.g., *Consolidated Systems v. Allstate Ins. Co.*, 411 F2d 157, 163 (5th Cir. 1969).

be able to sue under that agreement to require First American to cover Raintree.

This argument fails for two independent reasons. First, the concept of the "third-party beneficiary" doctrine is to allow a third party to sue to enforce the agreement.[11] OCGA § 9-2-20 (b) provides that "[t]he beneficiary of a contract made between other parties for his benefit may maintain an action against the promisor on the contract." Here the fronting agreement provided that in compensation for First American filing certificates of insurance with various state authorities, Commonwealth would indemnify First American for any liability arising out of such filings. In compliance with that agreement, First American allowed the Form E certificate to be filed in its name with the Texas Railroad Commission. *Thus, First American complied with its obligations as provided in the fronting agreement.* There is no basis for a third party to sue to enforce that agreement, as the agreement has been performed.

Second, even if there were a breach, Raintree would have no standing to sue for that breach. That claim belongs to Commonwealth in the first instance (and now, its receiver). For a third party to have standing to sue, "it must clearly appear from the contract that it was intended for his benefit. The mere fact that he would benefit from performance of the agreement is not alone sufficient."[12] The intent must appear from the face of the contract, as when the promisor engages to render some performance to a third person.[13]

The fronting agreement in this case is itself styled as an indemnity agreement and makes no reference to Raintree or to any insureds of Commonwealth. Commonwealth (Raintree's insurer) remains responsible for the adjustment and payment of all claims. There is no promise that, if Commonwealth becomes insolvent, First American will assume Commonwealth's obligations to its insureds. First American makes no promise to render performance to Raintree, but promises only to file Automobile Liability and Cargo certificates of insurance with various state authorities for Commonwealth. Thus, nowhere does it clearly appear that the agreement was intended by the parties to be for Raintree's benefit. Moreover, to the extent the agreement was intended to benefit Raintree, the benefit was to allow Raintree to operate in Texas by providing minimum liability coverage to members of the motoring public and not to require First American to reimburse it for damages it negligently caused.

---

[11] See, e.g., *Miree v. United States*, 242 Ga. 126, 135 (3) (249 SE2d 573) (1978).

[12] (Citations and punctuation omitted.) *Scott v. Mamari Corp.*, 242 Ga. App. 455, 457 (1) (530 SE2d 208) (2000); see OCGA § 9-2-20 (b).

[13] *Mamari Corp.*, supra, 242 Ga. App. at 457 (1); see *Plantation Pipe Line Co. v. 3-D Excavators*, 160 Ga. App. 756, 757 (287 SE2d 102) (1981).

The court did not err in granting First American summary judgment.

*Judgment affirmed. Pope, P. J., and Smith, P. J., concur.*

DECIDED APRIL 28, 2000 — MOTION FOR RECONSIDERATION WITHDRAWN JULY 25, 2000.

*Hall, Bloch, Garland & Meyer, John E. Hall, Jr., John F. Kennedy,* for appellant.

*Dennis, Corry & Porter, Ronald R. Coleman, Jr., John D. Dixon,* for appellee.

*Chambers, Mabry, McClelland & Brooks, Wilbur C. Brooks,* amicus curiae.